IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LAWRENCE E. SCIBLE,**

      **Plaintiff,**

**v.**                                             **Case No. 1:05-cv-166**
                                                   **(Chief Judge Keeley)**

**MIKE MILLER, JAY ROBBINS,**
**WILLIAM HAINES, JIM RUBENSTEIN,**
**DIVISION OF CORRECTIONS, NATIONAL**
**UNION INSURANCE COMPANY OF PA,**

      **Defendants.**

## REPORT AND RECOMMENDATION

On December 23, 2005, plaintiff initiated this case by filing a civil rights complaint under 42 U.S.C. § 1983, the Federal Tort Claims Act, and the Religious Land Use and Institutional Persons Act (RLUIPA), 42 U.S.C. § 2000cc. Plaintiff is proceeding *pro se* and *in forma pauperis*. This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C.§ § 1915(e) and 1915A.

**I. The Complaint**

In the complaint, plaintiff asserts that the defendants placed him in a cell with a dangerous inmate. Plaintiff complained that he was being sexually harassed by the other inmate and feared he would be sexually assaulted. Defendants Miller and Robbins advised plaintiff that "prison rape" was a part of prison life and refused to remove plaintiff from the cell. As a result, plaintiff filed a grievance requesting he be moved from his cell for fear of violence. Defendant Miller moved plaintiff to another cell that same day. However, plaintiff was issued a

disciplinary report for allegedly making threats against defendant Miller in the grievance.[1] Plaintiff was found guilty of the charge and was sentenced to 30 days segregation (suspended), 90 days probation, and 30 days loss of privileges. Plaintiff appealed the guilty finding, but was denied relief. Therefore, plaintiff filed a notice of his intent to file suit with the West Virginia Attorney's Office.

Also in the complaint, plaintiff alleges that he is of the Rastafarian faith and that he has taken the vow of the Nazarite. Pursuant to his religious beliefs, plaintiff requested an exemption from the Division of Correction's grooming policy, a religious diet, and assistance in finding a Rastafarian leader and/or literature so that he may appropriately practice his faith. Plaintiff filed his request with defendant Haines. Defendant Haines informed plaintiff that in order to change his religion, he must file the appropriate paperwork with the Chaplain. Moreover, defendant Haines informed plaintiff that he would be required to abide by the grooming policy.

Unsatisfied with this response, plaintiff appealed to defendant Rubenstein. Upon review of the complaint, defendant Rubenstein remanded the issue back to defendant Haines for a determination of whether plaintiffs' religious beliefs were sincerely held, whether there is a compelling interest with respect to the grooming policy, and whether there are less restrictive ways in which plaintiff's religious beliefs can be accommodated. On remand, defendant Haines found that plaintiff's religious beliefs were not sincerely held, that there are several compelling reasons for enforcing the policy and that there are no less restrictive means to enforce the policy. Despite plaintiffs' objections to defendant Haines' findings, plaintiffs' request for exemption was denied by defendant Rubenstein.

---

[1] In the grievance, plaintiff stated that "this G-1 puts you on notice."

## II. Claims of the Complaint

Based on the aforementioned facts, plaintiff asserts the following grounds for relief:

(1) the defendants were deliberate indifferent to a serious threat against plaintiffs' person;

(2) plaintiffs' disciplinary report was retaliatory and false;

(3) the regulation allowing plaintiff to be disciplined for language in a written grievance is unconstitutional on its face;

(4) the finding of guilt was erroneous and not supported by the facts;

(5) the finding of guilt violated plaintiffs' Sixth Amendment right of access to the courts;

(6) the defendants violated plaintiffs' First Amendment right to freely practice his religion; and,

(7) the actions of the defendants violated the RLUIPA.

## III. Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. 1915(e).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis*

which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Section 1915(e) dismissals should only be ordered when the legal theories are "indisputably meritless,"[2] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

**IV. Analysis**

A. Deliberate Indifference

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id. n3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837.

Based on the facts now before the Court, the undersigned finds that summary dismissal of

---

[2] Id. at 327.

4

this claim is not warranted and that the defendants should be ordered to respond to the complaint.

B.  Disciplinary Charge

Prison disciplinary proceedings are not part of a criminal prosecution, therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). However, inmates are entitled to some due process protections. Id. Those protections include: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. Id. On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel. Id. at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445 (1985).

Based on the facts now before the Court, the undersigned finds that summary dismissal of this claim is not warranted and that the defendants should be ordered to respond to the complaint.

C.  Free Exercise of Religion Under First Amendment

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or

abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." With regard to prisoners, the Supreme Court has noted that "[i]n the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives on the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Therefore, a prison policy "alleged to infringe constitutional rights [is] judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone v. Estate Shabazz, 482 U.S. 342, 349 (1987). However, the Court is required to give deference to the judgment of prison administrators in First Amendment challenges. Id at 350.

In Turner v. Safley, 482 U.S. 78, 85 (1987), the United States Supreme Court formulated a reasonableness test sensitive to both the need to protect the constitutional rights of inmates and the policy of judicial restraint regarding prisoner complaints. Specifically, the Court determined that when a prison regulation or policy "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id at 89. Therefore, although a prison regulation may infringe on an inmate's constitutional rights, that infringement is only actionable to the extent that the regulation is unreasonable. Id.

In articulating the Turner test, the Court identified several "factors that are relevant to, and that serve to channel, the reasonableness inquiry." Thornburgh v. Abbott, 490 U.S. 401, 414 (1989). The Turner factors are: (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates;

(3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates and the allocation of prison resources generally;[3] and, (4) whether the regulation represents an "exaggerated response" to prison concerns. Turner at 89-91; Shaw v. Murphy, 534 U.S. 223, 229-30, (2001).

Thus the first step in considering a free exercise of religion claim, is to determine whether there has been an infringement in the first place. To do so, the Court must determine whether the Plaintiff is sincere in his asserted religious beliefs. If he is, and the regulation in question impinges upon his free exercise of religion, the second step is to determine whether the plaintiff has "substantially burdened in his religious practice." See Turner, 482 U.S. at 89-91; O'Lone, 482 U.S. at 345.

Based on the facts now before the Court, the undersigned finds that summary dismissal of this claim is not warranted and that the defendants should be ordered to respond to the complaint.

D. RLUIPA

With respect to institutionalized persons, section 3 of the RLUIPA states that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

---

[3] The Court must also consider the "ripple effect" of any accommodation. See Turner, 482 U.S. at 90 ("When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials.").

42 U.S.C. § 2000cc-1.

This section "covers state-run institutions -- mental hospitals, prisons, and the like -- in which the government exerts a degree of control unparalleled in civilian society and severely disabling to private religious exercise. RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 125 S.Ct. 2113, 2121-2122 (2005) (internal citations omitted).

Based on the facts now before the Court, the undersigned finds that summary dismissal of this claim is not warranted and that the defendants should be ordered to respond to the complaint.

E. Federal Tort Claims

The FTCA waives the federal governments' traditional immunity from suit for claims based on the negligence of its employees. 28 U.S.C. § 1346(b)(1). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Therefore, in order to state a claim under the FTCA, the plaintiff must allege that the conduct of which he complains was committed by a federal employee. F.D.I.C. v. Meyer, 510 U.S. 471, 477 (to be actionable under § 1346(b) and § 1379(b), the claim must be caused by the wrongful act of an employee of the Federal Government). In this case, none of the named defendants are federal employees. Accordingly, plaintiff may not maintain an FTCA claim and the claim should be dismissed without prejudice.

**V. Recommendation**

In consideration of the foregoing, it is the undersigned's recommendation that the plaintiff's FTCA claim be dismissed without prejudice. Otherwise, the undersigned recommends that the complaint NOT be summarily dismissed and that the defendants be SERVED with a copy of the complaint so they can respond to the claims made against them.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Judge for the Northern District of West Virginia. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.[4]

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff and any counsel of record.

Dated: February 2, 2006.

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

---

[4] 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).