**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**LAWRENCE E. SCIBLE,**

      **Plaintiff,**

**v.**                                                            **Case No. 1:05-cv-166**
                                                                   **(Chief Judge Keeley)**

**MIKE MILLER, JAY ROBBINS,
WILLIAM HAINES, JIM RUBENSTEIN,
DIVISION OF CORRECTIONS, NATIONAL
UNION FIRE INSURANCE COMPANY OF PA,**

      **Defendants.**

**OPINION/REPORT AND RECOMMENDATION ON
DEFENDANT NATIONAL UNION'S MOTION TO DISMISS AND
PLAINTIFFS' SECOND MOTION FOR INJUNCTIVE RELIEF**

On December 23, 2005, plaintiff initiated this case by filing a civil rights complaint under 42 U.S.C. § 1983, the Federal Tort Claims Act ["FTCA"], and the Religious Land Use and Institutional Persons Act ["RLUIPA"], 42 U.S.C. § 2000cc. This case is currently before the undersigned for a report and recommendation on Defendants Miller, Robbins, Haines, Rubenstein, and the Division of Corrections' ["DOC" or "WVDOC"] Motion to Dismiss the Complaint, National Union Fire Insurance Company of PA's ["National Union"] Motion to Dismiss the Complaint, and plaintiffs' second Motion for Injunctive Relief.

**I. Procedural History**[1]

On February 2, 2006, I conducted a preliminary review of the file and recommended the dismissal of plaintiffs' claims under the FTCA and service of the complaint as to the remaining claims. That report and recommendation was adopted in its entirety by the Honorable District

---

[1] The undersigned has limited its discussion of the procedural history of this case to only those documents now before me.

Judge Irene M. Keeley on March 14, 2006.[2]  By separate Order that same day, Judge Keeley also noted that plaintiff filed a document titled "declaration" on March 7, 2006, in which he requested injunctive relief.  Thus, Judge Keeley directed the Clerk to file the document as a motion for injunctive relief and referred the motion to the undersigned for a report and recommendation.

On April 3, 2006, defendants Miller, Robbins, Haines, Rubenstein and the DOC filed their motion to dismiss the complaint.

On April 10, 2006, National Union filed a Motion to Dismiss and Memorandum in Support.

On April 13, 2006, the Court issued a notice to the *pro se* plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising him of his right to respond to the defendants motions and that the failure to do so could result in an entry of dismissal against him.

On April 20, 2006, plaintiff filed a Motion to Withdraw his first motion for injunctive relief and his Objections to defendants Miller, Robbins, Haines, Rubenstein, and DOC's motion to dismiss the complaint.

On April 27, 2006, plaintiff filed a reply to National Union's motion to dismiss.  Also on April 27th, I granted plaintiffs' motion to withdraw his first motion for injunctive relief.  In doing so, I noted that plaintiff requested permission to withdraw his first motion in lieu of a second motion for injunctive relief, of which plaintiff provided a proposed copy.  Accordingly, I instructed the Clerk to file plaintiffs' proposed second motion for injunctive relief and his memorandum in support.  The Clerk did so that same day.

On May 1, 2006, National Union filed a reply to plaintiffs' response to its motion to

---

[2] Plaintiff objected to the first report and recommendation, but only as to my characterization of his claims and not as to any of my substantive findings or legal conclusions.

dismiss.

On May 4, 2006, Defendants Miller, Robbins, Haines, Rubenstein, and the DOC filed a response to plaintiffs' second motion for injunctive relief.

On May 9, 2006, the Court received a letter from the plaintiff which the court construed as a supplement to his second motion for injunctive relief. That same day, defendants Miller, Robbins, Haines, Rubenstein and the DOC filed a reply to the plaintiff's objections to their motion to dismiss.

On May 11, 2006, plaintiff filed a reply to Defendants' Miller, Robbins, Haines, Rubenstein and the DOC's response to his second motion for injunctive relief. That same day, Defendants Miller, Robbins, Haines, Rubenstein and the DOC filed a response to plaintiffs' supplement to his second motion for injunctive relief.

## II. The Pleadings

### A. The Complaint

In the complaint, plaintiff asserts that the defendants placed him in a cell with a dangerous inmate. Plaintiff complained that he was being sexually harassed by the other inmate and feared he would be sexually assaulted. Defendants Miller and Robbins advised plaintiff that "prison rape" was a part of prison life and refused to remove plaintiff from the cell. As a result, plaintiff filed a grievance requesting he be moved from his cell for fear of violence. Defendant Miller moved plaintiff to another cell that same day. However, plaintiff was issued a disciplinary report for allegedly making threats against defendant Miller in the grievance.[3] Plaintiff was found guilty of the charge and was sentenced to 30 days segregation (suspended),

---

[3] In the grievance, plaintiff stated that "this G-1 puts you on notice."

90 days probation, and 30 days loss of privileges. Plaintiff appealed the guilty finding, but was denied relief. Therefore, plaintiff filed a notice of his intent to file suit with the West Virginia Attorney's Office.

Also in the complaint, plaintiff alleges that he is of the Rastafarian faith and that he has taken the vow of the Nazarite. Pursuant to his religious beliefs, plaintiff requested an exemption from the Division of Correction's grooming policy, a religious diet, and assistance in finding a Rastafarian leader and/or literature so that he may appropriately practice his faith. Plaintiff filed his request with defendant Haines. Defendant Haines informed plaintiff that in order to change his religion, he must file the appropriate paperwork with the Chaplain. Moreover, defendant Haines informed plaintiff that he would be required to abide by the grooming policy.

Unsatisfied with this response, plaintiff appealed to defendant Rubenstein. Upon review of the complaint, defendant Rubenstein remanded the issue back to defendant Haines for a determination of whether plaintiffs' religious beliefs were sincerely held, whether there is a compelling interest with respect to the grooming policy, and whether there are less restrictive ways in which plaintiff's religious beliefs can be accommodated. On remand, defendant Haines found that plaintiff's religious beliefs were not sincerely held, that there are several compelling reasons for enforcing the policy and that there are no less restrictive means to enforce the policy. Despite plaintiffs' objections to defendant Haines' findings, plaintiffs' request for exemption was denied by defendant Rubenstein.

Based on the aforementioned facts, and plaintiff's clarification of his claims in his objections to my first report and recommendation, the complaint asserts that the following grounds for relief:

(1) the defendants were deliberate indifferent to a serious threat against plaintiffs' person;

(2) plaintiffs' disciplinary report was retaliatory and false;

(3) the regulation allowing plaintiff to be disciplined for language in a written grievance is unconstitutional on its face because it violates his First Amendment right to free speech;

(4) the finding of guilt was erroneous and not supported by the facts;

(5) the finding of guilt violated plaintiffs' First and Sixth Amendment rights of access to the courts, free speech and to seek redress;

(6) the defendants violated plaintiffs' First Amendment right to freely practice his religion; and,

(7) the actions of the defendants violated the RLUIPA.

## B.  The Defendants Answers

### Miller, Robbins, Haines, Rubenstein, and the DOC

In their motion to dismiss, these defendants assert, generally, that the complaint should be dismissed because:

(1) plaintiff has not exhausted his administrative remedies;

(2) the plaintiff fails to state an Eighth Amendment claim and/or the defendants are entitled to qualified immunity;

(3) the plaintiff makes no claim of physical injury under 42 U.S.C. § 1997e(e);

(4) the West Virginia Divisions of Corrections policy pertaining to inmate grooming is reasonably related to compelling governmental and penological interests; and

(5) the defendants are entitled to absolute immunity.

In addition, in the memorandum in support of their motion, the defendants also assert that

true threats are not protected speech under the First Amendment. Therefore, plaintiffs' First Amendment challenge to the policy which allows him to be disciplined for speech in a written grievance should be denied.

**National Union**

In its motion to dismiss, National Union asserts that the only allegation made against it is in paragraph 10 of the complaint which states "Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania, a Pennsylvania corporation is and was at all times relevant herein the insurer for the Divisions of Correction for the State of West Virginia, pursuant to a contract with the West Virginia Board of Risk and Insurance Management." Because plaintiff has not asserted any wrongdoing or any harmed caused by National Union, the Complaint should be dismissed as to that defendant under Rule 8(a)(2) of the Federal Rules of Civil Procedure for the failure to state a claim upon which relief can be granted.

## C.  Plaintiffs' Replies

In response to the motion to dismiss filed by defendants Miller, Robbins, Haines, Rubenstein, and the DOC, plaintiff argues that his claims should not be dismissed for failure to exhaust because he clearly provided the Court with documentation showing that he exhausted all three levels of the DOC's administrative remedy process. Second, plaintiff asserts that he is not required to make a showing of physical injury under 42 U.S.C. § 1997e(e) because the Eighth Amendment protects him against future harm from other inmates. Third, plaintiff argues that punishing an inmate for language in a written grievance, even if hostile, sexual, abusive or threatening, is a violation of free speech and restricts his right of access to the courts. Fourth, plaintiff argues that he has made a showing that the defendants violated his right to freely

practice his religion. Fifth, plaintiff argues that the defendants failed to address whether his rights under the RLUIPA were violated and that failure should be taken as an admission and his complaint should not be dismissed. And, finally, plaintiff argues that the defendants are not entitled to absolute immunity because he has sued them in both their individual capacities for monetary damages and in their official capacities only to the extent that he seeks injunctive relief.

In response to the motion to dismiss filed by National Union, plaintiff contends that because National Union insures the other defendants in this case, it maintains an agency relationship and /or continuing responsibility for their actions by contract agreement and is properly a defendant in this case.

**D. The Defendants Responses**

**Miller, Robbins, Haines, Rubenstein, and the DOC**

In response to the plaintiff's reply to their motion, defendants Miller, Robbins, Haines, Rubenstein, and the DOC assert that the cases cited by plaintiff to show that he is not required to show a physical injury are distinguishable from the instant case because the threat of sexual assault was removed by the defendants when they transferred him to another cell. Additionally, the defendants reargue that their claim that true threats are not protected speech under the First Amendment, that they have not violated plaintiffs' First Amendment rights to freely practice his religion and these defendants are entitled to qualified immunity because plaintiff has sued them in their official capacities.

**National Union**

In response to the plaintiff's reply to its motion to dismiss, National Union asserts that

plaintiff must mistakenly believe that he must sue the DOC's insurance company in order to recover from the DOC. National Union asserts that proposition is incorrect because he may sue the DOC directly. Therefore, the only way in which plaintiff can sue National Union is by alleging some actual wrongdoing by National Union, which he has not done. Thus, National Union asserts that the complaint should be dismissed against it.

### III. Standard of Review

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### IV. Analysis

#### A. Defendant Miller, Robbins, Haines, Rubenstein and the DOC's Motion to Dismiss

Upon a review of defendant Miller, Robbins, Haines, Rubenstein, and the DOC's Motion to Dismiss the plaintiff's complaint, the undersigned notes that the defendants make several policy arguments regarding plaintiffs' free exercise and RLUIPA claims. However, the defendants have failed to provide any affidavits from prison officials substantiating those claims. See e.g., Ragland v. Angelone, 420 F.Supp.2d 507, 513-514 (4th Cir. 2006) (quoting Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal, ____ U.S. _____, 126 S.Ct. 1211, 1223 (2006) ("To defend a neutral regulation of general applicability, the government must 'demonstrate a

compelling interest in uniform application' of the regulation 'by offering evidence that granting the requested religious accommodations would seriously compromise its ability to administer the program.'  Government officials' mere speculation regarding possible adverse effects of allowing a religious exception is insufficient to prove that the interest in uniform applicability is compelling; they must present evidence of administrative harm that constitutes a compelling interest.").

Therefore, rather than conduct a piecemeal analysis of the motion, the undersigned will defer making a recommendation as to that motion until the defendants (Miller, Robbins, Haines, Rubenstein and the DOC) provide the appropriate affidavits.  Further, the undersigned believes that thirty (30) days should be sufficient time in which to file the missing affidavits.

**B.  National Union's Motion to Dismiss**

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added)  "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by  plaintiff that he has a valid claim of some type against defendant."  Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

In the instant case, plaintiff lists numerous alleged constitutional violations against the defendants but makes no specific allegations against National Union.  However, plaintiff asserts

9

that National Union should be held liable in this instance because it maintains an agency relationship and /or continuing responsibility for the actions of the other defendants due to its role as an insurer of the WVDOC.

In West Virginia, "[a]n agent is one who, subject to some control of another, acts on behalf of that other as a representative in the conduct of the other's business or contractual relations with third persons." See Jones v. Wolfe, 203 W.Va. 613, 616, 509 S.E.2d 894, 897 (1998) (citations omitted). Therefore, "an agent is personally liable for a tort committed within the scope of an agency relationship." Id. The party seeking to impose liability under an agency theory has the burden of proving the existence of the relationship. See Crothers v. Commodity Futures Trading Comm., 33 F.3d 405, 410 (4th Cir. 1994) (citations omitted).

Although National Union does not dispute that it is the insurer of the WVDOC, plaintiff has not provided a single piece of evidence to show that National Union exerts any type of control over the business of the DOC as a result of their relationship. Accordingly, the DOC is not an agent of National Union and National Union is not personally responsible for the torts committed by the DOC or its employees, at least not beyond any obligation it may have pursuant to the parties insurance contract.

Thus, because plaintiff has failed to show that the DOC is an agent of National Union, plaintiff can only sue National Union to the extent that National Union participated in the alleged unconstitutional acts. However, the undersigned has already found that plaintiff has failed to make any specific allegations against National Union. Therefore, plaintiff fails to state a claim for which relief can be granted against National Union and the complaint should be dismissed as to that defendant. See Weller v. Dept. of Social Servs., 901 F.2d 387 (4th Cir. 1990) (dismissal

proper where there were no allegations against defendants).

## V. Plaintiffs' Second Motion for Injunctive Relief

The standard for granting injunctive relief in this Court is the balancing-of-hardship analysis set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). In making this analysis, the Court must consider the following four factors:

    (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction

    is denied,

    (2) the likelihood of harm to the defendant if the requested relief is granted,

    (3) the likelihood that the plaintiff will succeed on the merits, and

    (4) the public interest.

Direx Israel, Ltd v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." Id. (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. Id. The required harm "must be neither remote nor speculative, but actual and imminent." Id. (citations and internal quotation omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. Id. (citation omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d

353, 359 (4th Cir. 1991) (citations omitted).  However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required."  Id. (citation omitted).

Here, plaintiff claims he is a Rastafarian who has taken the vow of the Nazarite.  For purposes of this Order, the Court will assume that plaintiffs' religious beliefs are sincerely held.[4]  Plaintiff seeks an injunction preventing the WVDOC from punishing him for refusing to cut his hair or shave his beard and from forcibly doing so if plaintiff continues to fail to comply with the grooming policy.  This exact issue was recently addressed by United States District Court for the District of South Carolina in Smith v. Ozmint, 2006 WL 895034 (D.S.C. March 31, 2006).

The South Carolina Department of Corrections ("SCDC") has an inmate grooming policy that requires all male inmates to have hair that is neatly cut (not to exceed one inch in length) and that remains above the shirt collar and the ear (but not touching the ear).[5]  Smith at *1.  The policy also forbids braids, plaits, Afros, blow-outs, Mohawks, etchings of designs or patterns, and other extreme styles.  Id.  All inmates must comply with this policy, regardless of their religious beliefs.  Id.  If an inmate refuses to comply with the policy, his hair may be forcibly shaved or cut.  Id.

---

[4] Warden Haines, in addressing plaintiff's grievances on this issue, found that plaintiff's religious beliefs were not sincerely held.  See Complaint at Ex. K.

[5] The WVDOC grooming policy states that the hair length of male inmates will not exceed the top of the collar or ears, be no more than three (3) inches on top and be kept neat and clean.  See WVDOC Policy Directive 334.01.  In addition, the grooming policy does not permit facial hair and each WVDOC facility is to establish its own operational procedures for the enforcement of grooming standards.  Id.  Plaintiff is incarcerated at Huttonsville Correctional Center.  The grooming policy at Huttonsville Correctional Center expands the DOC's general grooming policy by requiring male inmates to shave their facial hair daily, limiting the length of sideburns, and forbidding certain fair styles such as, shaved heads, corn rows, plaits, Mohawks, designs, etc.  See Motion to Dismiss (dckt. 30) at Ex. A.  The failure to comply with the grooming policy subjects an inmate to disciplinary action, the loss of privileges, etc.  Id.  However, the policy allows medical exceptions so long as they are authorized by the staff physician and religious exceptions so long as they are authorized by the Warden.  Id.

12

Smith is a SCDC inmate who practices Rastafarianism, which among other things, prohibits the cutting of hair. Id. When Smith refused to comply with the SCDC grooming policy, he was sprayed with Cs gas, beaten, shackled, and forcibly dragged to the barber shop where his head was shaved with sharp clippers. Id. Smith filed suit against the SCDC asserting a claim under § 3 of RLUIPA. Id. at *2. In examining Smith's claims, the District of South Carolina, citing Cutter v. Wilkinson, 544 U.S. 709, 125 S.Ct. 2113 (2005), recognized that RLUIPA recently withstood a constitutional challenge under the Establishment Clause. Id. In Cutter, the Supreme Court found that RLUIPA was the "latest of long-running congressional efforts to accord religious exercise heightened protection from government imposed burdens" by replacing the "legitimate penological interest" standard of Turner v. Safly, 482 U.S. 78, 89 (1987) with the "compelling governmental interest" and "least restrictive means" tests found in RLUIPA. Smith at *2. The District of South Carolina then set forth the Blackwelder standard for granting injunctive relief in this Circuit and analyzed Smiths' claims accordingly. Id.

In balancing the potential harms to the parties, the District of South Carolina found that the SCDC policy caused Smith irreparable harm to the extent that it violated his sincerely held religious beliefs. Smith at *3. However, the Court found that the harm to the plaintiff if the injunction did not issue was outweighed by the harm to the defendants if the injunction did issue. In so finding, the Court recognized the SCDC's grooming policy was important for maintaining safety, sanitation, and the security of the prison. Id. (citing Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) ("[I]t has long been recognized that, within the prison environment, courts grapple with yet another set of special considerations -- those dictated by the needs and problems inherent in a penitentiary.") Therefore, because the balance of hardship did not tip in the

plaintiff's favor, the District of South Carolina found that Smith must make a "strong or substantial showing of likelihood of success on the merits." Id. (quoting Direx Israel, Ltd. v. Breakthrough MedicalCorp., supra).

To determine whether Smith had made a strong or substantial showing that he was likely to succeed on the merits of his claim, the District of South Carolina noted that under RLUIPA, Smith had to state "a prima facie claim that SCDC's grooming policy, the physical enforcement of the policy by the guards, and the punitive sanctions imposed designed to coerce him to comply with that policy constitute a substantial burden of the exercise of his religious beliefs." Smith at *4 (citing 42 U.S.C. § 2000cc2(b)). Further, the Court noted that if Smith can make such a showing, then the SCDC will have the burden of persuading the Court that any burden on Smith's "exercise of his religious beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of furthering that compelling governmental interest.'" Id. (quoting 42 U.S.C. §§ 2000cc-1(a) and 2000cc-2(b)) (emphasis in original). Moreover, the Court noted that "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id. (citing 42 U.S.C. § 2000cc-3(g)).

With these principles in mind, the Court found that Smith's religious beliefs were substantially burdened by the SCDC's grooming policy which allowed hair to be forcibly cut to insure compliance.[6] However, the Court noted that the Fourth Circuit has already found that prison grooming policies requiring short hair serve the compelling state interests of security, safety, and sanitation. Id. (Citing Hines v. South Carolina Department of Corrections, 148 F.3d 353, 358 (4th Cir. 1998)). Therefore, the only question that remained was whether or not the

---

[6] The Court acknowledged that in the Rastafarian faith, the Nazarite Vow forbids the cutting of hair. Smith at *4, n 3.

policy, which offers no exceptions for religious beliefs, is the least restrictive means.

Upon an examination of similar cases in other Circuits, the District of South Carolina noted that most Circuits have held that the forcible cutting of hair can be the least restrictive means. See Smith at *4 (listing cases). However, in this Circuit, the issue is far from clear. To the contrary, the Court noted that prior to RLUIPA, the Fourth Circuit upheld a finding by the Eastern District of Virginia in which that court found that a policy allowing forced haircuts, even over religious objections, violated the First Amendment. Id. at *5 (citing Gallahan v. Hollyfield, 516 F.Supp. 1004 (E.D.Va. 1981), *aff'd*, 670 F.2d 1345 (4th Cir. 1982)).[7] Although Gallahan was later abrogated by subsequent decisions of the Supreme Court, RLUIPA returns the strict scrutiny standard espoused in Gallahan to the instant claims and is instructive. Smith at *5.

Other courts in this Circuit have also recently addressed similar issues arising from the grooming policy of the Virginia Department of Corrections ["VDOC"] and found that the VDOC's grooming policy was the least restrictive means necessary. See Ragland v. Angelone, supra; see also Acoolla v. Angelone, 2006 WL 938731 (W.D.Va. April 10, 2006). However, in those cases, the inmates were not forcibly groomed when they failed to comply. Instead, they merely suffered various disciplinary actions and were placement in segregation if they *chose* not to comply with the policy.

Upon an independent examination of the pertinent caselaw, the undersigned is persuaded that the analysis of the District of South Carolina is correct in this instance. Moreover, I agree that although there is a substantial burden on the practice of plaintiffs' religion, that burden is

---

[7] In affirming the decision of the district court, the Fourth Circuit found that "[p]rison regulations which affect a prisoner's right to worship must be reasonably and substantially justified by considerations of prison discipline and order and further must be in a form substantially warranted by the requirements of prison safety and order." Gallahan, 670 F.2d at 1346.

15

outweighed by the concerns of the WVDOC in enforcing its policy.[8]  Furthermore, unlike the South Carolina grooming policy, the WVDOC policy does make exceptions for religious beliefs. However, the Warden has determined that plaintiff has failed to qualify for that exception.  Thus, because the Court is also required to give deference to the expertise of prison officials in matters of prison administration,[9] plaintiff in this case is even less likely to make a showing of a substantial likelihood of success on the merits than the plaintiff in Smith.  Accordingly, the granting of injunctive relief should be denied.

## VI.  Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that defendant National Union's Motion to Dismiss (dckt. 33) be GRANTED and National Union be dismissed with prejudice from this case.  Furthermore, it is the recommendation of the undersigned that plaintiffs' second Motion for Injunctive Relief (dckt. 42) be DENIED.  However, the undersigned will DEFER making a recommendation on defendant Miller, Robbins, Haines, Rubenstein, and the DOC's motion to dismiss.  Those defendants have THIRTY (30) DAYS from the date of this Order in which to file affidavits substantiating their claims.  The undersigned will take that motion under advisement after the expiration of the thirty days.

Within ten (10) days after being served with a copy of this recommendation, any party

---

[8] Like the SCDC, the WVDOC asserts that inmate grooming standards facilitate the identification of inmates, facilitate inmate searches, promote hygiene, and promote the safety and security of the facility.  See Response to plaintiffs' second motion for injunctive relief (dckt. 44) at 3.  Moreover, because the Court is merely assessing the likelihood of plaintiffs' success on the merits, the Court has not required the defendants to file affidavits for purposes of making a recommendation as to plaintiffs' motion for injunctive relief.  However, as previously set forth in this Order, defendants Miller, Robbins, Haines, Rubenstein, and the DOC will be required to file the appropriate affidavits before the undersigned makes a recommendation on the merits of their motion to dismiss.

[9] See Cutter v. Wilkinson, 125 S.Ct. at 2123.

may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Judge for the Northern District of West Virginia. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff and counsel of record.

Dated: May 25, 2006.

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE