FILED
JUL 2 5 2006
U.S. DISTRICT COURT
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LAWRENCE C. SCIBLE,

    **Plaintiff,**

v.                              Civil Action No. 1:05CV166
                                  (Judge Keeley)

MIKE MILLER, JAY ROBBINS,
WILLIAMS HAINES, JIM RUBENSTEIN,
DIVISION OF CORRECTIONS, NATIONAL
UNION FIRE INSURANCE COMPANY OF PA,

    **Defendants.**

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. INTRODUCTION

On December 23, 2005, the pro se plaintiff, Lawrence C. Scible ("Scible"), filed a civil rights complaint under 42 U.S.C. §1983, the Federal Tort Claims Act ("FTCA"), and the Religious Land Use and Institutional Persons Act ("RLUIPA"), 42 U.S.C. §2000cc. On March 7, 2006, Scible also filed a document titled "Declaration," seeking a preliminary injunction.

On March 14, 2006, the Court directed the Clerk to serve these pleadings on the defendants. In response, on April 3, 2006, the defendants, Mike Miller ("Miller"), Jay Robbins ("Robbins"), William Haines ("Haines"), Jim Rubenstein ("Rubenstein"), and the Division of Corrections ("DOC"), filed a motion to dismiss, and, on April 10, 2006, defendant National Union Fire Insurance Company of PA ("National Union") also filed a motion to dismiss. These matters

were referred to the Magistrate Judge John S. Kaull for Report and Recommendation pursuant to LR Civ P 7.02(c) and LR PL P 72.01.

On May 26, 2006, the Magistrate Judge entered a Report and Recommendation, recommending that all claims against National Union be dismissed with prejudice and that Scible's request for injunctive relief be denied. On June 9, 2006, Scible filed timely objections to the Magistrate Judge's recommendations, and, on June 22, 2006, defendants Miller, Robbins, Haines, Rubenstein, and DOC filed a response to Scible's objections.

For the reasons above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, **GRANTS** National Union's motion to dismiss, **DISMISSES WITH PREJUDICE** all claims against defendant National Union and **DENIES** Scible's second motion for injunctive relief.

## II. RELEVANT BACKGROUND

### A. Scible's Complaint

On December 23, 2005, Scible filed a civil rights complaint under 42 U.S.C. §1983, the FTCA, and the RLUIPA. Scible alleges that the defendants placed him in a cell with a dangerous inmate and ignored his claims that he was being sexually harassed and had fears that he would be sexually assaulted. Scible asserts that he ultimately filed a grievance and was moved to another cell, but was

also issued a disciplinary report for allegedly making threats against defendant Miller in his grievance. Scible further alleges that, because of his Rastafarian faith, he requested an exemption from the DOC's grooming policy, a religious diet, and assistance in finding a Rastafarian leader and/or literature so that he may appropriately practice his faith.[1] However, defendant Haines informed him that he would need to file the appropriate paperwork with the Chaplain to change his religion and would be required to abide by the grooming policy. On appeal, defendant Rubenstein denied Scible's request for exemption from the grooming policy.

Based on these factual allegations, Scible asserts the following grounds for relief:

> (1) the defendants were deliberately indifferent to a serious threat against plaintiff's person;
> (2) plaintiff's disciplinary report was retaliatory and false;
> (3) the regulation allowing plaintiff to be disciplined for language in a written grievance is unconstitutional

---

[1] On June 26, 2006, Scible filed a "Brief in Support of Religious Literature" (dkt no. 63) and, on June 28, 2006, he filed a "Brief in Support of Religious Diet." (dkt no. 65). On June 30, 2006, defendants Miller, Robbins, Haines and Rubenstein and the DOC objected to the briefs. In Paragraph 28 of his complaint, Scible alleges that the defendants violated his First Amendment and Fourteenth Amendment rights to practice his religious belief by prohibiting him from growing dreadlocks and refusing to provide him with a religious diet or religious literature. Because these briefs relate to claims raised in Scible's civil rights complaint, the Court finds that the briefs should be considered by the Magistrate Judge when reviewing and ultimately making a recommendatin with respect to Scible's claims against defendants Miller, Robbins, Haines and Rubenstein and the DOC.

  on its face because it violates his First Amendment right to free speech;
(4) the finding of guilt was erroneous and not supported by the facts;
(5) the finding of guilt violated plaintiff's First and Sixth Amendment rights of access to the courts, free speech and to seek redress;
(6) the defendants violated plaintiff's First Amendment right to freely practice his religion; and,
(7) the actions of the defendants violated RLUIPA.

Furthermore, Scible seeks injunctive relief as well as compensatory and punitive damages.

## B. Procedural History

On February 2, 2006, the Magistrate Judge entered his initial Report and Recommendation based on his preliminary review of Scible's civil rights complaint. He recommended that Scible's claims brought under the FTCA be dismissed, but that the complaint be served on the defendants with respect to the §1983 and RLUIPA claims. On February 13, 2006, Scible objected to the Magistrate Judge's initial Report and Recommendation, but only as to the Magistrate Judge's characterization of his claims and not as to any substantive findings or recommendations. On March 7, 2006, he also filed a pleading titled "Declaration," requesting injunctive relief.

On March 14, 2006, the Court adopted the Magistrate Judge's initial Report and Recommendation in its entirety, dismissed Scible's FTCA claims and directed the Clerk to serve the complaint

on the defendants. In a separate order entered on the same day, the Court directed the Clerk to file Scible's "declaration" as a motion for injunctive relief and referred the motion to the Magistrate Judge for a report and recommendation.

On March 15, 2006, the Clerk issued summonses for all the defendants, and all summonses were returned executed by March 31, 2006. On April 3, 2006, defendants Miller, Robbins, Haines, Rubenstein and the DOC filed their motion to dismiss the complaint, and, on April 10, 2006, defendant National Union also filed its motion to dismiss. On April 13, 2006, the Magistrate Judge entered a <u>Roseboro</u> Notice, advising Scible of his right to file a response brief to the motions to dismiss. Scible subsequently filed a response to each motion to dismiss, and the defendants filed their reply briefs.

On April 20, 2006, Scible filed a motion to withdraw his first motion for injunctive relief, submitting an amended motion which he requested be considered by the Court in lieu of his original motion. On April 27, 2006, the Magistrate Judge granted Scible's motion to withdraw and instructed the Clerk to withdraw Scible's first motion and file his proposed second motion for injunctive relief.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On May 26, 2006, Magistrate Judge Kaull filed his Report and Recommendation concerning the defendants' motions to dismiss and Scible's second motion for injunctive relief. On June 9, 2006, Scible filed timely objections to the Magistrate Judge's recommendations, and, on June 22, 2006, defendants Miller, Robbins, Haines, Rubenstein, and DOC filed a response to Scible's objections.

### C. Magistrate Judge's Report and Recommendation

With respect to defendants Miller, Robbins, Haines, Rubenstein, and the DOC's motion to dismiss, the Magistrate Judge stated that the defendants failed to provide any affidavits from prison officials substantiating their claims of administrative harm concerning Scible's free exercise and RLUIPA claims. Accordingly, he deferred making a recommendation as to their motion to dismiss and provided them with thirty days in which to provide the appropriate affidavits.

With respect to defendant National Union's motion to dismiss, the Magistrate Judge stated that Scible did not make any specific allegations against National Union, but merely asserted that it should be held liable because it maintains an agency relationship with the other defendants in its role as an insurer of the West Virginia DOC. Magistrate Judge Kaull concluded that Scible did not

provide a single piece of evidence to show that National Union exerts any type of control over the business of the DOC as a result of their insurer/insured relationship.

Because Scible failed to establish that the DOC is National Union's agent, the Magistrate Judge stated that Scible could only sue National Union to the extent that it participated in the alleged unconstitutional acts. Therefore, he concluded that Scible had failed to state a claim for which relief can be granted against National Union because he failed to make any specific allegations against it and recommended that all claims against National Union be dismissed with prejudice.

Concerning Scible's second motion for injunctive relief, the Magistrate Judge stated that Scible sought a preliminary injunction enjoining the DOC from punishing him for refusing to cut his hair or shave his beard and from forcibly requiring his hair to be cut if he continues to refuse to comply with the grooming policy. The Magistrate Judge noted that this exact issue had recently been addressed by Judge Patrick M. Duffy of the District of South Carolina in Smith v. Ozmint, 2006 WL 895034 (D.S.C. March 31, 2006).

In Smith, the court found that the balance of hardship did not tip in the favor of the plaintiff because the South Carolina

Department of Corrections' grooming policy was important for maintaining safety, sanitation, and the security of the prisons. Based on the deference given to the policies developed by prison officials, the court concluded that the plaintiff could not make a "strong or substantial showing of likelihood of success on the merits." Here, the Magistrate Judge found that Scible was even less likely to make a showing of a "strong or substantial showing of likelihood of success on the merits" because the West Virginia DOC's grooming policy had a religious exception and prison officials had determined that Scible did not fall under that exception. Accordingly, he recommended that Scible's second motion for injunctive relief be denied.

### III. STANDARD OF REVIEW

The district court judge "shall make a de novo determination of those portions of the [Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); See also Fed. R. Civ. P. 72(b); E.g., Fluellen v. Epstein, 2003 U.S. Dist. LEXIS 23562 (D. S.C. 2003) aff'd 84 Fed. Appx. 299 (4th Cir. 2003). However, for ". . . those portions of the [Magistrate Judge's] Report to which plaintiff has not properly objected . . . " no review is required. Rouse v.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Nielsen, 851 F. Supp. 717, 720 (D. S.C. 1994)(citing Fed. R. Civ. P. 72(b))(citation omitted).

Moreover, when ruling on a motion to dismiss a claim, a district court must assume all facts well-pleaded by the petitioner to be true. Walker v. True, 399 F.3d 315, 319 (4th Cir. 2005)(citing Rouse v. Lee, 339 F.3d 238, 248 n.8 (4th Cir. 2003)). Further, a motion to dismiss for failure to state a claim may only be granted as a matter of law "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### IV. ANALYSIS

#### A. National Union's Motion to Dismiss

Neither the defendants nor Scible filed any objections to the Magistrate Judge's findings and recommendations concerning National Union's motion to dismiss. In point of fact, Scible expressly concurred with the Magistrate Judge's recommendation that National Union's motion to dismiss be granted. Magistrate Judge Kaull's Report and Recommendation informed the parties that failure to object to his recommendations would result in the waiver of their appellate rights on the uncontested issues. Accordingly, the Court need not conduct a *de novo* review of the Magistrate Judge's

analysis or conclusions with respect to Scible's claims against National Union. See 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") (emphasis added); Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); see also United States v. 2121 E.30th St., 73 F.3d 1057, 1060 (10th Cir. 1996) (noting that circuit courts have uniformly held that the failure to file specific objections waives appellate review of factual and legal questions).

Therefore, the Court adopts Magistrate Judge Kaull's recommendations concerning National Union's motion to dismiss, grants National Union's motion to dismiss and dismisses with prejudice all claims against defendant National Union.

### B. Second Motion for Injunctive Relief

Scible objected to the Magistrate Judge's findings and recommendations with respect to his second motion for injunctive relief. Scible seeks an injunction preventing the DOC from punishing him for refusing to cut his hair or shave his beard and from forcibly doing so if he continues to refuse to comply with the grooming policy allegedly based on his religious beliefs. Scible alleges that he is a Rastafarian who has taken the vow of the Nazarite and that this religion forbids him from cutting his hair.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Magistrate Judge relied heavily on the recent holding in Smith v. Ozmint, 2006 WL 89034, *1 (D.S.C. March 31, 2006) because the case also involved a Rastafarian who sought an order from the court preventing the South Carolina Department of Corrections ("SCDOC") from forcibly cutting his hair.

Applying the Blackwelder factors[2], the magistrate judge in Smith v. Ozmint found that, while the plaintiff would be irreparably harmed to the extent that the forced haircuts violated his religious beliefs, the harm to the defendants if they were not able to enforce the grooming policy outweighed the plaintiff's possible harm. Smith v. Ozmint, 2006 WL at *3. The magistrate judge further found that the plaintiff was unlikely to succeed on the merits of his RLUIPA claim. Id. Smith argued that the magistrate judge erred both in finding that the harm to the defendants'

---

[2] In Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc., 550 F.2d 189 (4th Cir. 1977), the Fourth Circuit set forth four equitable factors that a district court must consider when determining whether a preliminary injunction should issue. See also Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802 (4th Cir. 1992); Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353 (4th Cir. 1991). Those factors to be considered under the Blackwelder test are:

    (1) the likelihood of irreparable harm to the plaintiff if the injunction is denied;
    (2) the likelihood of harm to the defendant if the requested relief is granted;
    (3) the likelihood that the plaintiff will succeed on the merits; and
    (4) the public interest.

Direx Israel, 952 F.2d at 812. A plaintiff pursuing such relief bears the burden of establishing that each of these factors supports granting the injunction. Id. at 812.

outweighed any harm suffered by him and in finding that he failed to show a sufficient likelihood of success on the merits of his RLUIPA claim. Id.

The district court found that the plaintiff's claim was not frivolous and his harms were irreparable and substantial. Id. It, however, further found that, given the special circumstances that are involved in setting a prison policy, the risk of harm to prison security and discipline outweighed "the restriction on this one aspect of an individual inmate's practice of his religion." Id. Accordingly, the district court concluded that the magistrate judge did not err in recommending that the balance of harms weighed in favor of the defendants. Id.

With respect to a showing of a strong likelihood of success on the merits, the court stated that, to establish his RLUIPA claim, Smith had the burden of persuasion to prove a substantial burden on his religious beliefs. Id. at *4. If Smith met his burden, the defendants had the burden of persuasion to prove that any substantial burden was both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling interest. Id. The district court agreed with the magistrate judge's finding that the grooming policy imposed a substantial burden on Smith's religious beliefs. Id.

Relying on Hines v. South Carolina, 148 F.3d 353, 358 (4th Cir. 1998), the Smith court noted that the Fourth Circuit had already recognized that prison grooming policies serve the compelling state interests of security, safety, and sanitation. Id. Accordingly, it agreed with the magistrate judge that the defendants successfully showed that the grooming policy served a compelling state interest. Id.

With respect to less restrictive means, the court stated that "[m]ost Circuits to have addressed this issue have held that prison grooming policies which, like the SCDOC's policy, recognize no religious exceptions and allowed the forced cutting of hair, could be the least restrictive option. Id. However, it also pointed out that, in the Fourth Circuit, it had not been established that a grooming policy which offers no alternative to short hair could be the least restrictive policy. Id. at *5. Rather, prior to the enactment of RLUIPA, the Fourth Circuit affirmed a finding by the Eastern District of Virginia that a policy allowing forced haircuts, even over religious objections, violated the First Amendment. Id. (citing Gallahan v. Hollyfield, 516 F.Supp. 1004 (E.D.Va. 1981)).

In Smith, the court stated that Gallahan reflects the Fourth Circuit's efforts to protect the religious rights of inmates while

at the same time recognizing the expertise and needs of professional prison officials in addressing difficult issues of prison administration, such as security and order. Id. Furthermore, in Smith, the court cited Cutter v. Wilkinson, 544 U.S. 709 (2005), noting that courts applying RLUIPA must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Id. It also cited to two districts courts in Virginia which held that requiring inmates to follow a grooming policy and penalizing them for noncompliance did not violate constitutional rights. Id. (citing Ragland v. Angelone, 420 F.Supp.2d 315 (W.D.Va. March 14, 2006), and DeBlasio v. Johnson, 128 F.Supp.2d 315 (E.D.Va. 2000)).

After its review of the Fourth Circuit's holding in Gallahan and the rulings in the more recent district court cases, the Smith court stated that it was difficult to determine whether the SCDOC's grooming policy would be found to be the least restrictive means available. Smith v. Ozmint, 2006 WL at *6-7. However, given the deference courts are required to show to the opinions of experienced prison officials, the court found that the plaintiff

could not show a substantial likelihood of success to support the his request for a TRO. Id.

Based on an independent examination of pertinent case law, Magistrate Judge Kaull concluded that the analysis by the District Court of South Carolina in Smith was correct in this instance. He agreed that there is a substantial burden on the practice of Scible's religion, but that his burden is outweighed by the DOC's concern to enforce its grooming policy. He also concluded that, because the Court is required to give deference to the expertise of prison officials in matters of prison administration, Scible was even less likely to make a showing of a substantial likelihood of success on the merits than the plaintiff in Smith because the West Virginia DOC's policy provides a religious beliefs exemption.

The "irreparable harm" and "likelihood of success" are the critical factors in the preliminary injunction analysis in this matter. In his objections, Scible states that, in Smith v. Ozmint, the court found the grooming policy caused Smith irreparable harm to the extent that it violated his sincerely-held religious belief and argues that the same holds true in the present matter. Scible further asserts that, unlike in Smith, providing injunctive relief in this case will not cause harm to the defendants because they already offer a religious exemption to the grooming policy for some

inmates and can still manage their security and hygiene concerns. Therefore, he argues that the balance of hardship tips in his favor and he should not have to make a strong or substantial showing of likelihood of success on the merits for issuance of a preliminary injunction.

Here, the warden determined that Scible did not qualify for the religious exemption to the DOC's grooming policy. Because of their expertise in prison administration, the prison officials are in the best position to evaluate an inmate's individual circumstances and determine whether an exemption from the grooming policy should be provided based on their religion. Were the Court to overrule the warden's decisions with respect to which inmates should and should not receive religious exemptions from the grooming policy, the policy would lose its effectiveness, and, the prison officials would be unable to closely manage prison safety and security, as well as hygiene. Accordingly, the risk of harm to the discipline and security provided by the grooming policy in the prison setting outweighs any harm to Scible resulting from restricting one aspect of his religious practices.

If, after balancing the irreparable harm to the plaintiff against any harm to the defendant, the balance tips decidedly in favor of the plaintiff, a temporary restraining order will be

granted if the plaintiff has "raised questions going to the merit so serious, substantial, difficult and doubtful as to make them fair grounds for litigation and thus for more deliberate investigation." Blackwelder, 550 F.2d at 195. However, if the balance of the competing interest does not decidedly tip in favor of the plaintiff, the plaintiff then must show a strong probability of success on the merits. Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 818 (4th Cir. 1991).

Scible argues that the religious exemption to the DOC's grooming policy also weighs in his favor with respect to his likelihood of success on the merits of his RLUIPA claim. He claims that the warden at the Huttonsville Correctional Center has never granted any inmate a religious exemption to the grooming policy despite receiving numerous requests, and, therefore, asserts that the denials are not rationally related to any legitimate governmental interest. Based on these allegations, Scible argues that the Court should not give deference to prison officials for denying his request for an exception from the grooming policy.

In Smith, the court had to determine whether a grooming policy which offered no exceptions for religious beliefs could be the least restrictive means used to promote prison safety and security. Smith v. Ozmint, 2006 WL at *6. The court noted that other courts

had relied heavily on the fact that a grooming policy had an exception in concluding that the policy was the least restrictive means available. Id. The Smith court, however, recognized that the fact that one prison may operate safely while under a less restrictive regulation is no evidence that another could safely operate under the same regulation. Id. at 7. Therefore, it concluded that Smith failed to make a strong showing of likelihood of success despite the lack of any religious exception to the South Carolina DOC's grooming policy. Id.

Rather than supporting Scible's position, in this case, the DOC's religious exception to its grooming policy makes it more difficult for Scible to demonstrate a substantial likelihood for success on the merits because the presence of a religious exemption to the DOC's grooming policy strengthens the defendants' argument that they are utilizing the least restrictive means to achieve their safety, security and hygiene goals within the prison. Furthermore, Scible claims that he was arbitrarily and capriciously denied the exception, but inconsistently states that the warden has never granted any inmate exception to the grooming policy based on religious beliefs. If these allegations are true, the warden's decision not to provide the religious exception to any prisoners falls within his expertise and should be given due deference by the

**SCIBLE V. MILLER ET AL**  1:05CV166

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Court. Therefore, the Court **ADOPTS** the Magistrate Judge's recommendations and **DENIES** Scible's second motion for injunctive relief.

## V. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation in its entirety, **GRANTS** National Union's motion to dismiss, **DISMISSES WITH PREJUDICE** all claims against defendant National Union, and **DENIES** Scible's second motion for injunctive relief.

The Clerk is directed to mail a copy of this Order to the pro se plaintiff via certified mail, return receipt requested and to counsel of record.

Dated: July 25, 2006.

IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE