IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LAWRENCE E. SCIBLE,

      Plaintiff,

v.                            Civil Action No. 1:05CV166
                            (Judge Keeley)


MIKE MILLER, JAY ROBBINS,
WILLIAMS HAINES, JIM RUBENSTEIN,
DIVISION OF CORRECTIONS,
NATIONAL UNION FIRE INSURANCE COMPANY,

      Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DISMISSING WITH PREJUDICE PLAINTIFF'S COMPLAINT

This matter is now before the Court for consideration of United States Magistrate Judge John S. Kaull's Report and Recommendation (dkt no. 76), dated February 13, 2007, on the defendants' motion to dismiss (dkt no. 30), and the plaintiff's corresponding objections (dkt nos. 77 & 78). For the reasons stated below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation in its entirety, **GRANTS** the defendants' motion to dismiss, and **DISMISSES WITH PREJUDICE** the plaintiff's complaint.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Scible's Complaint**

On December 23, 2005, the pro se plaintiff, Lawrence E. Scible ("Scible"), filed a civil rights complaint under 42 U.S.C. §1983, the Federal Tort Claims Act ("FTCA"), and the Religious Land Use and Institutional Persons Act ("RLUIPA"), 42 U.S.C. §2000cc.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Scible is currently an inmate at the Huttonsville Correctional Center located in Huttonsville, West Virginia. In his complaint, Scible alleges that the defendants placed him in a cell with a dangerous inmate and ignored his claims that he was being sexually harassed and had fears that he would be sexually assaulted. According to Scible, he ultimately filed a written grievance and was moved to another cell. Scible, however, was issued a disciplinary report for allegedly making threats against Defendant Mike Miller in his grievance.[1] Scible was found guilty of the charge and was sentenced to 30 days segregation (suspended), 90 days probation, and 30 days loss of privileges. He appealed the guilty finding, but was denied relief.

Scible also alleges that, because of his Rastafarian faith, he requested: (1) an exemption from the West Virginia Division of Corrections grooming policy, (2) a religious diet, and (3) assistance in finding a Rastafarian leader and/or literature so that he may properly practice his faith. According to Scible, he was informed that, in order to change his religion, he must file the appropriate paperwork with the chaplain, but that he was required to abide by the grooming policy. Scible appealed to the Commissioner of the West Virginia Division of Corrections, and the

---

[1] In his written grievance, Scible stated that "[t]his G-1 puts <u>you</u> on notice."

2

<u>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

Commissioner remanded his complaint to the Huttonsville Correctional Center for a determination of whether Scible's religious beliefs were sincerely held, whether there was a compelling interest with respect to the grooming policy, and whether there were less restrictive ways in which Scible's religious beliefs could be accommodated. On remand, Defendant William Haines found that Scible's religious beliefs were not sincerely held, that there were compelling reason for enforcing the policy and that there were no less restrictive means to enforce the policy. Consequently, the Commissioner denied Scible's request for an exemption.

Based on these factual allegations, Scible asserts the following grounds for relief:

> (1) the defendants were deliberately indifferent to a serious threat against his person;
> (2) plaintiff's disciplinary report was retaliatory and false;
> (3) the regulation allowing plaintiff to be disciplined for language in a written grievance violates his First Amendment right to free speech;
> (4) the finding of guilt was erroneous and not supported by the facts;
> (5) the finding of guilt violated plaintiff's First and Sixth Amendment rights of access to the courts, free speech and to seek redress;
> (6) the defendants violated plaintiff's First Amendment right to freely practice his religion; and,
> (7) the actions of the defendants violated RLUIPA.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**B. Relevant Procedural History**

On February 2, 2006, the Magistrate Judge entered his initial Report and Recommendation based on his preliminary review of Scible's civil rights complaint. He recommended that Scible's claims brought under the FTCA be dismissed, but that the complaint be served on the defendants with respect to the §1983 and RLUIPA claims. Adopting the Magistrate Judge's initial Report and Recommendation, the Court dismissed Scible's FTCA claims and directed the Clerk to serve Scible's complaint on the defendants. On March 15, 2006, the Clerk issued summonses for all the defendants, and all summonses were returned executed by March 31, 2006.

On April 3, 2006, Defendants Mike Miller ("Miller"), Jay Robbins ("Robbins"), William Haines ("Haines"), Jim Rubenstein ("Rubenstein"), and the Division of Corrections ("DOC"), filed a motion to dismiss, and, on April 10, 2006, Defendant National Union Fire Insurance Company of PA ("National Union") also filed a motion to dismiss. On April 20, 2006, Scible submitted an amended motion for injunctive relief that he requested be considered by the Court in lieu of his original request for injunctive relief. The Magistrate Judge permitted Scible to withdraw his earlier request

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

and directed the Clerk to file his proposed second motion for injunctive relief on April 27, 2006.

On May 26, 2006, Magistrate Judge Kaull entered his second Report and Recommendation, recommending that all claims against National Union be dismissed with prejudice and that Scible's request for injunctive relief be denied. He, however, deferred ruling on Defendants Miller, Robbins, Haines, Rubenstein, and the DOC's motion to dismiss and provided those defendants with thirty additional days in which to submit affidavits to support their motion. After reviewing the objections filed by Scible, the Court adopted the Magistrate Judge's second Report and Recommendation, dismissed with prejudice Scible's claims against National Union, and denied his request for injunctive relief.

On June 22, 2006, Defendants Miller, Robbins, Haines, Rubenstein and the DOC submitted three affidavits in support of their motion to dismiss. Then, on September 20, 2006, the defendants filed an additional affidavit from Chaplain Randy Brake, the DOC's Chaplain, in support of their motion to dismiss. Scible filed several pleadings in opposition to these affidavits.

On February 13, 2007, Magistrate Judge Kaull filed his third Report and Recommendation concerning the disposition of Defendants Miller, Robbins, Haines, Rubenstein, and the DOC's motion to

<u>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

dismiss.  On February 22, 2007, Scible filed timely objections to the Magistrate Judge's recommendations, and, on March 6, 2007, he filed an addendum to his objections.

## II. MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Because the defendants' motion to dismiss was supported by affidavits and other documents, Magistrate Judge Kaull recommended that the Court construe the motion as one for summary judgment.  He ultimately recommended dismissal of Scible's entire complaint based on the following findings with respect to each individual claim:

**A. Ground One**

With respect to Scible's deliberate indifference claim, the Magistrate Judge stated that the events on which this claim is based occurred in no more than six days and Scible did not incur any physical injuries.  Specifically, he stated that, because the defendants acted swiftly, the threat of violence never actually materialized.  Therefore, Magistrate Judge Kaull concluded that Scible had failed to demonstrate that the defendants were deliberately indifferent to a serious threat against him.

**B. Ground Two**

With respect to Scible's retaliation claim, Magistrate Judge Kaull emphasized that the Fourth Circuit Court of Appeals has held that inmates do not have a constitutional right to participate in

<u>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

grievance procedures.  <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994).  He also noted that Scible offered nothing more than "mere naked conclusory allegations of reprisal" in support of his retaliation claim.  Therefore, the Magistrate Judge concluded that Scible had failed to state a claim of retaliation.

**C. Ground Three**

When addressing Scible's claim that the regulation permitting him to be disciplined for language in a written grievance violated his First Amendment right to free speech, Magistrate Judge Kaull indicated that the pivotal issue was whether the statement contained within the written grievance was a threat because a true threat is not constitutionally protected speech. <u>Watts v. United States</u>, 394 U.S. 705, 707-08 (1969).

In his written grievance, Scible stated, "This G-1 puts <u>you</u> on notice." Defendants Robbins and Miller submitted affidavits in which they state that being put on notice in a correctional facility is a threat of physical violence.  Furthermore, Defendant Robbins stated that he had seen correctional officers put on notice by an inmate who then later assaulted the officer.

Magistrate Judge Kaull also noted that Scible emphasized the word "you" by underlining it in his grievance and, therefore, concluded that this emphasis would lead an objective reader to

ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

believe that Scible was singling out Defendants Robbins and Miller. Accordingly, the Magistrate Judge distinguished the present facts from those in Bradley v. Hall, 64 F.3d 1276 (9th Cir. 1995), because Scible's grievance did not contain mere disrespectful language, but, instead, a threat. Therefore, he concluded that the language in Scible's grievance was not speech protected by the First Amendment.

**D. Ground Four**

With respect to Scible's claim that the finding of guilt at his disciplinary hearing was erroneous, Magistrate Judge Kaull stated that the full array of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Specifically relevant to Scible's claim, disciplinary decisions comport with the requirements of due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445 (1985). Based on his review of the hearing report for Scible's disciplinary proceeding, the Magistrate Judge concluded that there was clearly some evidence to support the guilty finding by the hearing officer.

<u>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

**E. Ground Five**

When addressing Scible's claim that the guilty finding also violated his First and Fourteenth Amendment rights of access to the courts, free speech, and to seek redress, Magistrate Judge Kaull restated his conclusion that Scible's written grievance was a true threat, and, therefore, it was not protected speech under the First and Fourteenth Amendments.

**F. Ground Six**

The Magistrate Judge broke down Scible's claim for violation of his First and Fourteenth Amendment rights to freely practice his religion into three categories: (1) grooming; (2) diet; and (3) literature. With respect to the DOC's grooming policy, he took judicial notice of the Fourth Circuit's decision in <u>Hines v. South Carolina Dept. of Corr.</u>, 148 F.3d 353, 357-358 (4th Cir. 1998) and concluded that the Fourth Circuit's decision in that case foreclosed Scible's claim.

The Magistrate Judge further concluded that Scible was not denied a religious diet. Specifically, he determined that Scible's claims were directed not a denial of a religious diet, but, instead, at the variety of foods available to him as a part of his religious diet.

ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Similarly, the Magistrate Judge concluded that Scible had not been denied religious materials and that his claims were merely complaints that the DOC would not pay for the religious materials that he requested.  He noted that the DOC's Policy Directive cited by Scible as support of his religious literature claim does not require the DOC to pay for religious materials for inmates. Moreover, the Magistrate Judge stated that the undisputed affidavit of Chaplain Brake demonstrates that the DOC does not purchase similar materials for inmates of other faiths.  Therefore, he determined that Scible's religious freedom claim should be denied.

**G. Ground Seven**

Finally, with respect to Scible's RLUIPA claim, Magistrate Judge Kaull stated that Scible must show that the failure of the DOC to provide him with a religious diet and religious literature imposed a substantial burden on the exercise of his religion. 42 U.S.C. §2000cc-1.  Because Scible failed to demonstrate that the DOC denied him a religious diet and literature, the Magistrate Judge concluded that he could not establish that the exercise of his religion was burdened, let alone that it was substantially burdened.

With respect to the DOC's grooming policy, the Magistrate Judge stated that, in Hines, the Fourth Circuit held that concerns

<u>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

of maintaining order, discipline and safety in the prison environment are compelling reasons for upholding a DOC's grooming policy. <u>Hines</u>, 148 F.3d at 358. He also noted that several courts concluded that grooming policies, even those that included forced cutting of hair, meet the "least restrictive means" criteria of RLUIPA. <u>See</u> <u>e.g.</u> <u>Diaz v. Collins</u>, 114 F.3d 69, 73 (5th Cir. 1997); <u>Hoevenaar v. Lazaroff</u>, 422 F.3d 366 (6th Cir. 2005); <u>Hamilton v. Schiro</u>, 74 F.3d 1545, 1555 (8th Cir. 1996). Accordingly, Magistrate Judge Kaull concluded that the DOC's grooming policy was established in furtherance of a compelling governmental interest and is the least restrictive means of addressing the prison's concerns of facilitating the prompt and accurate identification of inmates, facilitating inmate searches for weapons and contraband, and by promoting good hygiene.

### III. ANALYSIS

Following a magistrate judge's report and recommendation concerning a prisoner's complaint, the Court will review <u>de novo</u> any portions of the report and recommendation to which a specific objection is made, 28 U.S.C. § 636(b)(1), and the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the prisoner does not object. <u>Camby v. Davis</u>, 718 F.2d

<u>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

198, 199 (4th Cir. 1983).  Therefore, the Court will address each of Scible's objections to the Report and Recommendation in detail.

**A. Standard of Review**

Scible initially objects to the Magistrate Judge's application of the standard of review to the facts of this case.  Because the defendants' motion to dismiss was supported by exhibits which contained information beyond Scible's complaint, Magistrate Judge Kaull properly construed the motion as one for summary judgment.  Fed.R.Civ.P. 12(b)(6).  Accordingly, Scible, as the party opposing a properly supported motion for summary judgment, had the burden of establishing the existence of a genuine issue of material fact.  <u>Anderson</u>, 477 U.S. at 248-49.  "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); <u>see</u> <u>Celotex Corp.</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 252; <u>Shealy v. Winston</u>, 929 F.2d 1009, 1012 (4th Cir.1991).

Scible claims that summary judgment was not appropriate in the instant matter because there are still issues of fact in dispute, and, therefore, discovery and a jury trial are warranted to resolve

<u>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

the dispute. Although some issues may have been in dispute, those issues were not material to the elements of Scible's claims. Moreover, the undisputed facts were insufficient to support Scible's claims. Therefore, the Magistrate Judge correctly applied the appropriate standard of review to the facts of this case.

**B. Ground One**

With respect to his deliberate indifference claim, Scible contends that a brief threat of rape can be a devastating experience and that leaving him under "the duress of rape" for even an hour is "reprehensible, retaliatory and malicious." Therefore, he objects to the Magistrate Judge's finding that he did not establish deliberate indifference on the part of the defendants with respect to a serious threat against him.

To prove a deliberate indifference claim, the inmate must demonstrate that prison officials were deliberately indifferent to a serious risk of harm posed by a challenged condition. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-34 (1994). To prove deliberate indifference, plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed and that he actually drew that inference. <u>Id.</u> at 837. Then, plaintiff must show that the official disregarded the

<u>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

risk by failing to take "reasonable measures" to alleviate the risk. <u>Id.</u>

The undisputed facts are that, between July 15, 2005 and July 21, 2005, Scible made a verbal request to be moved from his cell, asserting that he feared that he would be raped by his cell mate. The defendants denied Scible's verbal request. Scible then filed a written request to be moved from his cell on approximately July 21st. On that same day, Scible was removed from his cell.

Accordingly, Scible made only two complaints during a six-day period concerning the alleged threat of violence by his cell mate. Furthermore, he made only one verbal complaint before filing his written request. Moreover, Scible received the relief he sought on the same day that he submitted his written grievance. Importantly, action was taken by the defendants before Scible incurred any physical harm. Therefore, the Magistrate Judge was correct in concluding that Scible failed to show that the defendants were deliberately indifferent to a serious threat.

**C. Ground Two**

With respect to his retaliation claim, Scible asserts that the Magistrate Judge improperly relied on <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994), in this case because its facts are easily

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

distinguishable. Specifically, Scible states that the complaint in
Adams was unclear, but that his complaint clearly asserted that he
was retaliated against because he requested to be removed from
danger and invoked the grievance procedure.    He further states
that the two grievances he submitted in opposition to the
defendants' motion demonstrate that the defendants punished him for
filing a written grievance. According to Scible, the grievances
demonstrate that he was moved into the predator/behavior unit in
retaliation for invoking the grievance process.

By attempting to distinguish the present facts from the facts
in Adams, Scible clearly demonstrates that his retaliation claim
arises from the filing of a grievance and falls squarely within the
four corners of the holding in Adams.    Retaliation claims "must
allege either that the retaliatory act was taken in response to the
exercise of a constitutionally protected right or that the act
itself violated such a right." Adams, 40 F.3d at 75.    In Adams,
the Fourth Circuit unequivocally held that "there is no
constitutional right to participate in grievance proceedings." Id.
(citation omitted). Therefore, Scible's retaliation claim is
directly foreclosed by the holding in Adams, and the Magistrate
Judge properly relied on Adams to dismiss the claim.

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**D. Ground Three**

Objecting to the Magistrate Judge's findings that his written grievance was a true threat, Scible states that "he should not have been punished for inarticulate phrasing of a statement," and denies that the grievance was a threat.   However, a written communication may be a "true threat" even though the speaker did not intend, and lacked the ability, to carry out the threat.   Virginia v. Black, 538 U.S. 343, 359-60 (2003); United States v. Darby, 37 F.3d 1059, 1066 (4th  Cir. 1994); United States v. Roberts, 915 F.2d 889 (4th Cir. 1990).

Scible also asserts that the defendants presented no evidence to establish that the phrasing- "This G-1 puts you on notice" - was threatening language in a prison setting.   To determine whether a communication is a threat, the Court must consider whether a reasonable recipient who is familiar with the context of the communication would interpret it as a threat.   United States v. Maisonet, 484 F.2d 1356, 1358 (4th Cir. 1973). Relying on the incidents surrounding the grievance and their experience as corrections officers, the defendants provided affidavits stating that they reasonably believed that Scible was threatening them with physical violence through his grievance.   Robbins's belief was

16

<u>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

based on his experience of witnessing other corrections officers put on notice by an inmate and then later assaulted by that inmate.

Other than questioning the weight that should be given to the affidavits, Scible failed to produce any evidence to establish that it was unreasonable for a corrections officer to interpret his grievance as a threat. For example, he questions why he was not immediately arrested and placed in segregation if the defendants truly believed his grievance was a threat. Scible, however, failed to produce any evidence other than his conclusory allegations that inmates who put officers "on notice" go immediately to segregation or that other inmates used the phrase "on notice" in a grievance and the corrections officers did not consider the statement to be a threat. Accordingly, the Magistrate Judge properly concluded that Scible's grievance was a threat. Thus, it is not language protected by the First Amendment.

**E. Ground Six**

   **1. Grooming Policy**

With respect to his claim concerning the DOC's grooming policy, Scible asserts that the Fourth Circuit's decision in <u>Hines v. South Carolina Dept. of Corr.</u>, 148 F.3d 353, 357-358 (4th Cir. 1998), does not foreclose his claim. Specifically, he contends

ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

that he is challenging the West Virginia DOC grooming policy and not the South Carolina DOC grooming policy.

West Virginia DOC Policy Directive 334.01 states that the hair length of male inmates will not exceed the top of the collar or the ears by no more than three inches on top and be kept neat and clean. The Directive does not permit facial hair, but allows each DOC facility to establish its own operational procedures for enforcement of grooming standards. At the Huttonsville Correctional Center, the grooming policy requires male inmates to shave their facial hair daily and forbids certain hairstyles, including but not limited to, shaved heads, corn rows, plaits, Mohawks and designs.

Similarly, the South Carolina DOC grooming policy, the specific policy at issue in Hines, required that all male inmates keep their hair short and their faces shaven, as well as prohibited braids, plaits, Mohawks and other extreme hair styles. Hines, 148 F.3d at 356. The South Carolina DOC permitted neatly groomed mustaches, but prohibited beards unless an inmate had a medical condition that would have been irritated by shaving.

Clearly, the West Virginia and South Carolina grooming policies are substantially similar. However, unlike the South Carolina DOC grooming policy, the West Virginia DOC grooming policy contains a religious exception which inmates may obtain through

authorization by the warden.  In <u>Hines</u>, the Fourth Circuit found that the South Carolina DOC grooming policy was not unconstitutional despite the lack of a religious exception.  <u>Hines</u>, 148 F.3d at 357-58.  Because the Fourth Circuit in <u>Hines</u> reviewed a grooming policy that was more strict than the policy at issue in this case and found it to be constitutional, the Magistrate Judge properly relied on its holding to foreclose Scible's constitutional claims with respect to the West Virginia DOC grooming policy.

**2. Religious Diet**

Scible states that he "sought a vegetarian religious diet, but was in effect, denied [the] same because of its nutritional inadequacies."  He argues that the Magistrate Judge's Report and Recommendation relies on false information and unsupported allegations in the defendants' affidavits as grounds for dismissal of his claim.  Specifically, Scible states that the Magistrate Judge "mistakenly reported" that he can supplement his diet with whole grains and fruits in the self-serve area.  In support of his contention, he provides the menu from the Huttonsville Correctional Center for the week of February 10, 2007 through February 16, 2007.

In response to Scible's claims that his religious diet was nutritionally inadequate, Magistrate Judge Kaull stated that inmates on the vegetarian diet are informed that the core meals are

ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

not nutritionally adequate and that they must be supplemented with food from the self serve areas and with nutritional supplements. He further stated that the self serve area contains items such as oatmeal and vegetables, "the very things that Plaintiff complains are lacking from his diet."

The menu provided by Scible only supports the conclusions of the Magistrate Judge. It demonstrates that, on three days of the week, self-serve oatmeal is available to the inmates for breakfast. On the mornings when oatmeal is not available, either Farina (creamy hot wheat cereal), grits and "ready to eat cereal" is available to the inmates at the self-serve area. The menu further demonstrates that, seven days a week, a juice drink (50% juice) is available to the inmates at breakfast and dinner. With respect to lunch and dinner, the menu shows that the inmates may obtain from the self serve area: beet salad, mix greed salad, slice tomatoes, soup beans, oven stripped potatoes, mashed potatoes, green bean salad, coleslaw, carrot salad, cucumber salad, seasoned noodles, seasoned rice and spanish rice. Clearly, the self-serve area provides a multitude of whole grains and vegetables with which Scible may supplement his vegetarian diet.

Accordingly, the Court agrees with the Magistrate Judge that the defendants cannot be faulted for Scible's failure to supplement

his own nutritional needs.  Although the foods available for the vegetarian diet may not be of the quality demanded by Scible, the menu clearly demonstrates that Scible has been provided with a vegetarian diet that will meet his nutritional needs.

### 3. Literature

With respect to his alleged denial of religious literature, Scible asserts that, as a prisoner, he is limited in his ability to obtain the necessary information refuting the defendants' allegations.  Scible overlooks the fact that the statements made by the defendants and Chaplain Brake in their affidavits are not mere allegations, but, rather, sworn statements subject to the penalty of perjury.  Accordingly, the Court views their statements as facts in the case.  Although he is a prisoner, Scible had the ability to obtain affidavits from other individuals to counter the facts established by the defendants.

Scible also alleges that the DOC spends funds on religious services, especially Christian based faiths.  Specifically, he alleges that Chaplin Brake is employed to solely to minister the Christian faith to inmates and that the DOC employs no religious leaders for other faiths.  In support of this contention, Scible produced a flyer informing inmates that Chaplin Brake and Chaplain

ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Lonnie Daniels would minister in church services held on Saturday, March 3, 2007 and Sunday, March 4, 2007.[2]

The DOC's Policy Directive 510.00 defines "Chaplain" as a paid employee of the State of West Virginia who works with the inmate population to ensure that their spiritual needs are met. Although Scible contends that the flyer establishes that Chaplain Brake is employed solely to provide services to inmates of the Christian faith[3], the undisputed facts establish that Chaplin Brake in fact works with the entire inmate population to ensure that their spiritual needs are met. In his affidavit, Brake states that he contacted One Love Press, which sent a book called "The Rasta Heart" to Scible. Scible does not dispute that Chaplain Brake assisted him in obtaining materials so that he may practice his faith, but, instead, complains that the DOC will not pay for the additional materials that he seeks.

Therefore, the record is clear that Chaplain Brake provides assistance to inmates of different faiths to ensure that their spiritual needs are met. Accordingly, the Magistrate Judge

---

[2] The defendants have conceded that Chaplain Brake is employed by the State of West Virginia as a Chaplain for the correctional facility. Scible failed to produce any evidence beyond his conclusory allegation that Chaplain Daniels is employed by the State of West Virginia rather than a volunteer.

[3] Importantly, Scible failed to produce any evidence that religious leaders from the Rastafarian faith who are willing to volunteer their services have been denied the opportunity to provide religious services to the inmates at the Huttonsville Correctional Center.

<u>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

properly concluded that Scible has not been denied access to religious literature in violation of the First and Fourteenth Amendment.

**F. Ground Seven**

With respect to his RLUIPA claim, Scible reasserts his objections to the Magistrate Judge's recommendation to dismiss his constitutional claims involving religious diet and literature. As the Magistrate Judge properly concluded from the undisputed facts, however, Scible has not been denied a religious diet or religious literature and he cannot establish that the exercise of his religion was substantially burdened by such failures as required under the RLUIPA. 42 U.S.C. 2000cc-1.

According to Scible, forcing prisoners to comply with the grooming policy puts prisoners and staff at serious risk of contracting life-threatening blood borne illnesses such as Hepatitis and Aids. He also states that "oppressing a person's religious practice because he is a prisoner is detrimental to the rehabilitative process and goes against the very fabric upon which this Nation was fashioned." Scible argues that, although it did not specifically address grooming policies, RLUIPA was written with

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

the intention of providing more protection than the First Amendment.[4]

The Magistrate Judge correctly stated that the Court is not required to give deference to Scible's expertise as an inmate. Rather, courts applying RLUIPA must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter v. Wilkinson, 544 U.S. 709 (2005). In their affidavit, Defendants Haines, Robbins, and Miller assert that the grooming policy of the DOC serves several compelling interests, including: (1) prompt and accurate identification of inmates; (2) efficient searches for weapons and contraband; (3) promotion of good hygiene; and (4) promotion of the safety and security of the facility. In Hines, the Fourth Circuit found that such concerns are compelling reasons for upholding a grooming policy in a correctional facility. Hines, 148 F.3d at 358. Furthermore, the Fourth Circuit found that a grooming policy more restrictive than the West Virginia DOC's policy was the least restrict means of achieving those concerns. Id. Therefore, the

---

[4] Scible concedes that challenges to grooming policies under the First Amendment have traditionally failed.

<u>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

Magistrate Judge properly concluded that Scible failed to state a claim for relief under RLUIPA.

### IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation in its entirety (dkt no. 76), **OVERRULES** Scible's objections (dkt nos. 77 & 78), **GRANTS** the defendants' motion to dismiss (dkt no. 30), and **DISMISSES WITH PREJUDICE** Scible's complaint. The Court further **DIRECTS** the Clerk to remove this case from its active docket.

It is **SO ORDERED.**

The Clerk is directed to mail a copy of this Order to the <u>pro se</u> plaintiff via certified mail, return receipt requested and to counsel of record.

Dated: March 19, 2007.


/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE